UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              CASE NO. 1:14-CR-178

v.

                              HON. ROBERT J. JONKER

ANGEL ALBERTO
SANTIAGO-HERNANDEZ,

        Defendant.
_____/

**OPINION AND ORDER** - *amended

This matter is before the Court on Defendant's Motion to Dismiss Superseding Indictment (docket # 20). Count 1 of the Superseding Indictment charges Mr. Santiago-Hernandez with being an alien illegally or unlawfully in the United States in possession of a firearm on or about June 23, 2014, in violation of 18 U.S.C. § 922(g)(5)(A). Count 2 charges him with being a felon in possession of a firearm on or about the same date, in violation of 18 U.S.C. § 922(g)(1). On March 18, 2015, the Court heard oral argument on the motion to dismiss and invited the parties to submit further briefing and record evidence (docket # 24). The parties have done so (docket ## 27-31, 33). The Court has thoroughly reviewed the record and carefully considered the applicable law. In its supplemental briefing, the government seeks leave of the Court to dismiss Count 2 of the Superseding Indictment, and the Defendant concurs. The Court **GRANTS** the request. This leaves only Defendant's Motion to Dismiss as to Count 1 of the Superseding Indictment to resolve.

**BACKGROUND**

The factual background is not in dispute. Mr. Santiago-Hernandez, who was 19 years old at the time of the charged offenses, was born in Mexico on December 18, 1994. His mother, a Mexican citizen or national, brought him to the United States from Mexico illegally when he was a small child. On May 28, 2008, the Juvenile Court of Sonoma County, California, declared Mr. Santiago-Hernandez a dependent of the Juvenile Court due to abandonment. (docket # 20-1.) On July 8, 2009, the Superior Court of California, County of Sonoma, in Session as a Juvenile Court, made a series of findings supporting Mr. Santiago-Hernandez's eligibility for status as a special immigrant juvenile ("SI-J") (docket # 20-1). On August 4, 2010, the United States Citizenship and Immigration Services ("USCIS") approved Mr. Santiago-Hernandez's petition for SI-J status. On August 26, 2014, Mr. Santiago-Hernandez submitted an application to the USCIS for an adjustment to permanent resident status. The parties indicate that the application remains pending, and there is no record evidence to the contrary.

Neither the grant of SI-J status nor the application for adjustment by themselves make Defendant a lawful permanent resident, or otherwise place Defendant in a valid immigrant or non-immigrant status. The approval of the SI-J status recites: "The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." And the USCIS form notifying Defendant of receipt of his application for an adjustment to permanent resident status states: "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." However, Congress has determined that a grant of SI-J status has the impact of "deeming" the beneficiary as "paroled" to the United States

so that the Secretary has authority to consider the beneficiary's application for adjustment to the status of lawful permanent resident.  8 U.S.C. § 1255(h).  This is potentially critical because the Bureau of Alcohol, Tobacco, Firearms and Explosives has promulgated regulations, 27 C.F.R. § 478.11, that appear to exclude aliens on parole status from the category of "aliens . . . illegally or unlawfully in the United States," who are prohibited from possessing firearms under 18 U.S.C. § 922(g)(5)(A).

Mr. Santiago-Hernandez has a record of juvenile adjudications in California.  This record includes the following:

(1)   October 6, 2011 (age 16).  Plea of "admission/no contest" to charge of conspiracy to commit assault and destruction of property with gang enhancement.

(2)   February 29, 2012 (age 17).  Plea of "admission/no contest" to two charges:

   (A)   actively participating in a criminal street gang with knowledge that its members engage in and have engaged in a pattern of criminal gang activity and promoting, furthering, and assisting in felony conduct by gang members.

   (B)   falsely identifying himself to a police officer upon a lawful detention and arrest.

(3)   May 8, 2012 (age 17).  Plea of "admission/no contest" to two charges:

   (A)   willful and unlawful use of force and violence upon a person committed for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members.

   (B)   participation in a criminal street gang with knowledge that its members engaged in and have engaged in a pattern of gang activity and promoting, furthering, and assisting in felony criminal conduct by gang members.

(docket # 22.)  Defendant has no known convictions as an adult.

The original Indictment in this case issued on October 8, 2014, and the Superseding Indictment issued on November 14, 2014. (docket ## 1, 14.) The only charge at issue asserts that Defendant is an alien illegally and unlawfully in the United States in possession of a firearm, specifically "a loaded Norinco model SKS, 7.62x39 mm caliber semiautomatic rifle, bearing serial number 24257974P," in violation of 18 U.S.C. § 922(g)(5)(A). Defendant moves to dismiss the charge because he was not "illegally or unlawfully" in the United States at the time of the alleged possession. Rather, Defendant contends he was on parole status since August 2, 2010, when USCIS found him a special immigrant juvenile (SI-J). To decide the motion, the Court must consider the intersection of a series of statutory provisions and implementing regulations.

Under 18 U.S.C. § 922(g)(5(A), it is "unlawful for any person . . . who, being an alien[,] ... is illegally or unlawfully in the United States . . . [to] possess in or affecting commerce, any firearm or ammunition. . . ." The statute itself does not define "alien . . . illegally or unlawfully in the United States." Regulations promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives implementing 18 U.S.C. § 922(g)(5)(A) define "alien" as "[a]ny person not a citizen or national of the United States." 27 C.F.R. § 478.11 (2014). The same regulations define "[a]lien illegally or unlawfully in the United States" as follows: "Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant, or *parole status*." 27 C.F.R. § 478.11 (2014) (emphasis added). Parole status is important because it is the only way a person like this defendant, who was smuggled into the country illegally by his mother, can be considered for adjustment to lawful permanent resident status. In particular, under 8 U.S.C. § 1255(a), the Attorney General may adjust the status of a person "inspected and permitted or paroled into the United States." Defendant was not

"inspected and permitted," but he was "paroled" based on the SI-J determination. In that capacity, he has applied for adjustment status.

In this case, it is Defendant's SI-J status that moved him from the category of illegal alien without parole status, to a person in parole status, at least for purposes of requesting adjustment. In particular, the SI-J status makes him a "special immigrant" under 8 U.S.C. § 1101(a)(27)(J), which means that he is

> an immigrant who is present in the United States –
>
> > (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, or abandonment, or a similar basis found under State law;
>
> > (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> > (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status [subject to exceptions not at issue in this case].

8 U.S.C. § 1101(a)(27)(J). And this, in turn, has the impact of putting Defendant in a special parole status. In particular, section 1255(h) provides that "[i]n applying this section to [an SI-J alien like Defendant], . . . such an immigrant shall be deemed, for purposes of subsection (a) of this section, to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). As a person "paroled into the United States," Defendant cannot be treated as an "alien . . . illegally or unlawfully in the United

States" under 18 U.S.C. § 922(g)(5)(A), because ATF regulations under that statute exclude aliens on "parole status" from the statutory prohibition. 27 C.F.R. § 478.11 (2014).[1]

It is undisputed that a person in SI-J status enjoys parole status at least for the particular purpose of applying for an adjustment to permanent resident status. 8 U.S.C. § 1255(h)(1). In general, "[t]he purpose of parole is to permit a non-citizen to enter the United States temporarily while investigation of eligibility for admission takes place." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005). And it is undisputed that the ATF regulations defining the critical term "alien . . . illegally or unlawfully in the United States" exclude aliens on "parole status." The most natural way to read this labyrinth of statutes and regulations together is to conclude that a person like Defendant who finds a pathway to parole status cannot violate 18 U.S.C. § 922(g)(5)(A) by possessing a firearm while on parole status.

The government objects that Defendant's parole status is more limited and applies only for the limited purpose of permitting the Attorney General to consider his application for adjustment of status under 8 U.S.C. § 1255(a), and not for any other purpose. It is certainly true that the Attorney General has not made an individual determination of parole for this Defendant under 8 U.S.C. §

---

[1]Indeed, regulatory history reflects that the language originally proposed defined "alien illegally or unlawfully in the United States" as follows: "Aliens who are unlawfully in the United States or are not in a valid nonimmigrant or immigrant status . . . ." Aliens on "immigration parole status" were explicitly not carved out of the "unlawful" category. T.D. ATF-391, 1997-3 A.T.F.Q.B. 1, 1997 WL 757126 (September 1997). The final regulation reflected revisions based on the INS's suggestion "that the definition be modified to better reflect the terminology used in the [INA]" and recommendation "that the proposed definition be amended to read as follows: "Alien illegally or unlawfully in the United States. Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant *or parole status*." (*Id.*) (emphasis added). The originally-proposed language giving no benefit to aliens "on immigrant parole status" did not appear in the final regulation. *Id.*

1182(d)(5)(A).² And it is also true that the categorical grant of parole status to SI-J immigrants specifically singles out the purpose of the parole status as opening the door to review of an adjustment application. 8 U.S.C. § 1255(h). But this is fully consistent with the general purpose of immigration parole. *Succar, supra*. Moreover, the ATF regulation that excludes aliens on "parole status" from the statutory prohibition on possessing firearms does not by its terms limit the nature of qualifying parole. The specific examples given by ATF reference individualized parole under 8 U.S.C. § 1182(d)(5)(A), but the general term "parole status" remains broad, inclusive, and undefined. There is no reason to limit it as the government suggests. Based on the plain language of the ATF regulation, an alien on "parole status" – like the Defendant here – cannot violate the statute he is charged with violating.

The parties have identified no cases that address this particular issue. Nor has the Court found any such cases independently. The government cites cases demonstrating that simply applying for adjustment of status does not prevent an illegal immigrant from being convicted as an illegal alien in possession of a firearm while the application is pending. But none of the cases deal with the

---

²Section 212(d)(5) of the INA provides the Attorney General with the power to grant individualized parole status. The statute states that the Attorney General may

> in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

unique wrinkle here: namely, a Defendant on "parole status" for at least some purpose. The plain language of the immigration statute places an SI-J alien on parole status for the purpose of applying for an adjustment to permanent resident status, 8 U.S.C. § 1255(h)(1). And the plain language of the ATF regulation takes an alien on "parole status" outside the scope of aliens "illegally and unlawfully in the United States" under section 922(g)(5). To the extent there is any ambiguity, the rule of lenity dictates the interpretation of the statutes and regulations that places Defendant in valid parole status and beyond the scope of 18 U.S.C. § 922(g)(5)(A). *Cf. U.S. v. Orellana*, 405 F.3d 360 (5th Cir. 2005) (observing that "Congress's decision to include illegal aliens within the categories of persons who are prohibited from possessing firearms does not necessarily indicate an intent to include within the prohibition aliens in receipt of [temporary protected status (TPS)]. Unlike illegal aliens who attempt to avoid detection, aliens registered for TPS have purposefully revealed their whereabouts to the government . . . . [S]uch aliens are not part of an underground population of persons who, unable to secure lawful employment, have a greater likelihood to engage in criminal conduct . . . . [,]" and applying the rule of lenity after finding that 18 U.S.C. § 922(g)(5)(A) is simply ambiguous as to whether an alien with TPS status is in the United States illegally or unlawfully). Accordingly, Count 1 of the Superseding Indictment must be dismissed.

This Defendant is not an attractive candidate to benefit from this construction. He has a juvenile history of violations of the law, and his alleged possession of a loaded semi-automatic rifle (docket # 14) understandably concerned government officials who investigated, and the Grand Jury that indicted. Nothing about the Court's decision precludes the USCIS from pursuing removal proceedings or any other measure within the scope of its authority. But for purposes of the criminal charge at issue here, the Court concludes Defendant cannot violate the statute as charged because

he was indisputably on parole status at the time of the alleged possession of the firearm. Accordingly, Count 1 of the Superseding Indictment must be dismissed.

**ACCORDINGLY, IT IS ORDERED**:

1. The Government's request for leave to dismiss Count 2 of the Superseding Indictment (docket # 28) is **GRANTED**.

2. The parties' Joint Motion for Leave to File Restricted Access Filing (docket # 27) is **GRANTED** except that the parties shall file on the public record the document granting SI-J status to Defendant. The parties shall complete such filing no later than June 17, 2015.

3. Defendant's Motion to Dismiss Superseding Indictment (docket # 20) is **GRANTED** to the extent Defendant seeks dismissal of Count 1 of the Superseding Indictment and is **DISMISSED AS MOOT** in all other respects.

      /s/Robert J. Jonker *
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

Dated: June 15, 2015